

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

January 31, 2007

Abraham S. Alter
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
    *(Attorney for Plaintiff)*

Sheena v. Barr
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
    *(Attorney for Defendant)*

    RE:    <u>Jones v. Commissioner of Social Security</u>
              <u>Civ. No. 05-3963 WJM</u>

Dear Counsel:

    Plaintiff Joanne Jones ("Jones") brings this action pursuant to 42 U.S.C. § 1383(c)(3) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). The Commissioner opposes. For the reasons articulated below, the Commissioner's decision is **AFFIRMED IN PART** and **REMANDED IN PART**.

## Background

    Jones applied for SSI benefits on July 10, 2001 alleging disability resulting from "severe

lupus, stomach and psychiatric conditions" as of 1999.  (Plaintiff's Complaint 2; Pl.'s Br. 9.)[1]
The application was denied initially and on reconsideration.  (Tr. 139-143, 148-150.)  At Jones's
request, a hearing to review the application was held before Administrative Law Judge Ralph J.
Muehlig ("ALJ") on April 10, 2003.  (Pl.'s Br. 1.)  A supplemental hearing was held before the
ALJ on November 26, 2003.  Id.  The ALJ denied Jones's application on August 26, 2004.  (Tr.
9-17.)  In explaining his decision, the ALJ evaluated the evidence by applying the five-step
analysis for determinations of disability claims.  (Tr. 14-17)  First, the ALJ found that Jones had
not engaged in any substantial activity since her application date.  (Tr. 14.)  Second, he found that
Jones suffered from a severe impairment involving systemic lupus erythematosus, arthalgias,
high blood pressure, and depression.[2]  (Tr. 14.)  At the third step, the ALJ determined that none
of these impairments met or equaled in severity the Listing of Impairments located at Appendix
1, Subpart P to Regulations No.4.  (Tr. 14.)  Then, at the fourth step, he found that Jones retained
the residual functional capacity ("RFC") to perform light work involving the lifting and carrying
of twenty pounds, frequently lifting and carrying ten pounds, standing, walking, and siting for six
hours, using arm and leg controls, and the full range of light work.  (Tr. 16.)  In addition, he
found that Jones had no significant non-exertional mental limitations.  (Tr. 16.)  The ALJ
determined, based on his findings and the testimony of medical and vocational experts, that Jones
could return to her past relevant work as a cashier, a job that consisted of standing for eight
hours, sitting for half of an hour, and not lifting or carrying.  (Tr. 16.)  Jones's request for review
by the Appeals Council was denied on June 10, 2005.  (Tr. 8.)

Jones timely appeals the ALJ's ruling.  She argues that substantial evidence exists in the
record to support a finding of disability.  (Pl.'s Br. 4.)  Jones's appeal is now before the Court.

**Standard of Review**

This Court exercises plenary review over the Commissioner's legal conclusions and is
bound by the Commissioner's factual findings if they are supported by substantial evidence.
*Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence "does not mean a large or
considerable amount of evidence, but rather 'such relevant evidence which, considering the
record as a whole, a reasonable person might accept as adequate to support a conclusion.'"
*Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary
of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence
is "more than a mere scintilla but may be less than a preponderance").  Thus, this Court's inquiry
is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind
to accept the conclusions reached by the Commissioner.  "Overall, the substantial evidence
standard is a deferential standard of review."  *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.

---

[1]  References to ("Pl.'s Br.") are to Plaintiff's Brief in Support of Plaintiff.  References to ("Tr.") are to the
certified transcript of the entire record of the proceedings in this case.

[2]  As discussed further in this Opinion, it is unclear whether the ALJ found that Jones's depression was a
severe impairment.

2

2004).

## Discussion

I. **Substantial Evidence Supports the ALJ's Decision that Jones's Visual Impairment is Not Severe**

Although Jones states that "[t]he ALJ's finding that Plaintiff's visual acuity is not severe is not supported by the substantial evidence," there is no discussion in Jones's brief regarding this assertion (Pl.'s Br. 10.) Furthermore, Jones did not list visual impairment as an illness, injury, or condition in her disability report. (Tr. 217.) During the hearings, however, there is some discussion regarding Jones's visual acuity. Jones makes reference to "ocular involvement" in connection with severe lupus during the first hearing. (Tr. 36.) During the supplemental hearing, the extent of Jones's "bad vision" is discussed again in the context of determining whether Jones meets the lupus listing. (Tr. 87, 107-120.) Although it is unclear whether Jones seeks review of the ALJ's findings regarding the severity of her visual impairment merely in the context of a lupus listing determination or as a separate medical condition, the Court will review the ALJ's finding that Jones's visual impairment was not severe in either context.

Step two of the five step analysis requires a determination of whether the impairment or impairments are medically severe. 20 C.F.R. 404.1520(a)(4)(ii). For an impairment to be severe, the impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. 404.1520(c). The Third Circuit has clarified that the objective of the first two steps is to "dispose of groundless claims," and "[o]nly those claimants with slight abnormalities which have 'no more than a minimal effect on an individual's ability to work'" are considered to have impairments that are not severe. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Further, "reasonable doubts on severity are to be resolved in favor of the claimant." Id. If there is contradictory probative evidence in the record as to severity, the ALJ must also explain why he chose to credit one medical report over another. See Fargnoli v. Halter, 247 F.3d 34, (3d Cir. 2001).

Jones's visual acuity is well documented in the record. Dr. Alexander Hoffman examined Jones on July 29, 2002 and stated, "visual acuity in the right eye uncorrected is 20/50, in the left 20/40." (Tr. 372.) Less than one year later, Dr. Francky Merlin examined Jones and noted that Jones's vision with her glasses was 20/50 in the right eye and 20/100 in the left eye. (Tr. 388.) At the hearing before the ALJ, Dr. Martin Fechner, a medical expert with a specialty in internal medicine, testified that 20/100 in one eye is "not good at all." (Tr. 100.) The ALJ, commenting on the incongruity of Dr. Hoffman and Dr. Merlin's assessments of Jones's visual acuity, decided to refer Jones to a state ophthalmologist. (Tr. 117.) Pursuant to the ALJ's referral, Dr. Bernard Sarn examined Jones on December 22, 2003. (Tr. 428.) In his report, Dr. Sarn noted that Jones lost her glasses. (Tr. 428.) Dr. Sarn further reported that Jones's corrected vision was 20/30 in the right eye and 20/30 in the left eye. (Tr. 428.) Dr. Sarn's eye examination included an examination of her visual fields. (Tr. 428-429.) He concluded that "there is no

impaired vision with [Jones] with glasses." (Tr. 429.)

The ALJ's assessment that Jones's visual impairment is not severe is supported by substantial evidence. (Tr. 13-14). The ALJ described the conflicting medical evidence regarding Jones's vision. (Tr. 13-16.) In order to resolve the conflict between the two general medical examiners and to assess Jones's claims of headaches that "hurt her eyes," the ALJ referred Jones to a specialist. (Tr. 15). At the post-consultative eye exam, Dr. Sarn revealed that Jones's vision, once corrected with appropriately prescribed glasses, was 20/30 in each eye. (Tr. 15). Furthermore, Dr. Sarn opined that Jones had no visual impairment with glasses. (Tr. 15). The ALJ indicated that he credited the specialist's opinion over that of Dr. Merlin's general evaluation of Jones. (Tr. 15.) Furthermore, the ALJ pointed out that Jones's vision once properly corrected supported his finding that Jones had no visual impairment with glasses. (Tr. 15.). Accordingly, the Court finds that the ALJ's determination regarding Jones's visual impairment was supported by substantial evidence.

## II.     The ALJ Must Clarify His Findings Regarding Jones's Mental Impairment.

Jones argues that substantial evidence does not support the ALJ's decision regarding her depression. Jones bases her arguments on three grounds. First, Jones cursorily argues that the ALJ's determination that her "depression is severe" but not a significant "non-exertional impairment" is a legal impossibility. (Pl.'s Br. 10.) Second, she argues that the ALJ failed to discuss the medical opinion of Dr. Michael Block, a Social Security psychiatrist. (Pl.'s Br. 16.) Third, she contends that the ALJ failed to discuss relevant testimony of the vocational expert, Mr. Rocco Meola. (Pl.'s Br. 16-17.) As discussed below, the Court affirms in part and remands in part.

### A.     The ALJ's Determination of Jones's Depression as a Severe Impairment

Jones contends that the ALJ's finding of severe depression at step two means that the ALJ erred in finding no significant non-exertional mental limitations.[3] (Pl.'s Br. 10.) In defending the ALJ's decision, the Commissioner argues that "although the ALJ initially listed depression as a severe impairment (see Tr. 14), a review of the entire ALJ decision indicates that the ALJ's inclusion of depression as a severe impairment was simply a typographical error." (Defendant's Brief at 10-11.) The Court disagrees with the Commissioner's analysis of the ALJ's decision.

Step two of the five step analysis requires a determination of whether the impairment or impairments are medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, then the third step is to compare the impairment(s) to the list of impairments in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant does not have a listed

---

[3] The Court finds Jones's argument, that an ALJ's determination of "severe impairment" under step two requires a finding under step four of a significant limitation, unpersuasive.

impairment, the fourth step is to determine whether, despite her severe impairment, she has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

The ALJ states that the "evidence establishes the existence of a 'severe' impairment involving systemic lupus erythematosus, arthalgias, high blood pressure, and depression." (Tr. 14.) Then, the ALJ states that the "claimant's depression does not meet listing 12.04 because the evidence fails to establish at least two marked limitations in the 'B' criteria of [listing Appendix 1, Subpart P to Regulations No. 4]." (Tr. 15.) The ALJ, however, in listing the "severe impairments" in his Findings No. 1 and No. 7, did not list depression. (Tr. 16-17.) Furthermore, he concludes that Jones did not have a "severe mental limitation"[4] and that Jones's depression was not "of a level to preclude work related activity." (Tr. 15-16.) These findings are incongruous.

If the ALJ's finding of severe depression was merely a typographical error as the Commissioner claims, the ALJ would have ended his analysis of Jones's depression and would not have further assessed whether Jones's depression meets the criteria for a listing under 12.04. (Tr. 15.) Furthermore, the ALJ's description of Jones's lack of significant non-exertional mental limitations is in the context of analyzing Jones's RFC under step four, indicating that the ALJ considered Jones's depression to be a severe impairment under step two requiring a determination of Jones's RFC. (Tr. 16.) The ALJ's findings both support and contradict conclusions that (1) Jones's mental impairment was not severe and (2) Jones's mental impairment was severe but did not impact Jones's ability to do light work.

As the ALJ's factual findings are unclear, the Court is unable to conduct its substantial evidence review. Therefore, the Court will **REMAND** to the ALJ for an explanation of whether Jones's depression is a "severe impairment," and whether Jones's mental limitations impact the ALJ's analysis of her RFC. Furthermore, the ALJ is directed to set forth an analysis of the evidence which supports his findings regarding Jones's mental impairment and an assessment on the impact that such findings may have on the ALJ's analysis of Jones's application.

**B.     Dr. Block's Evaluation**

Jones argues that Dr. Block's report and opinion were omitted from the ALJ's analysis of the evidence. (Pl.'s Br. 16.) In particular, Jones takes issue with the ALJ's failure to discuss Dr.

---

[4] Jones additionally claims that the ALJ misstates the facts underlying the State Agency physicians' assessment of no significant mental impairment. Jones argues that the physicians inadequately assessed her mental impairment because Dr. Block's psychiatric evaluation occurred before their review. (Pl.'s Br. 25.) The Court finds no evidence to support Jones's claim. Dr. Block's assessment was made on 11/5/2001. (Tr. 332-334.) The State Agency physicians reviewed Jones's files on 11/28/2001, 12/3/2001, and 8/7/2002. (Tr. 346-367.) Their reports indicate that they considered Jones's depression, that her affective disorder was not severe, and that the degree of mental limitation resulting from her affective disorder was mild to none. (Tr. 348, 354, 364.) Therefore, we find no error in the ALJ's statement that "the highly qualified state Agency medical consultants [] opined that the claimant did not have a severe mental limitation and that she could perform a full range of light work." (Tr. 16.)

Block's determination that Jones suffered moderate impairment with regards to her ability to sustain concentration, persist in performing tasks at a pace, and socially interact and adapt. (Pl.'s Br. 16.) This Court disagrees.

Dr. Block conducted a consultative psychiatric evaluation of Jones on 11/05/2001. He diagnosed her with "depression" and elaborated that: "[w]ith regard to her capacity to understand and for memory, there is minimal impairment;" "[w]ith regard to sustained concentration and persistence for performing tasks at a pace there is moderate impairment;" and "[r]egard to social interaction and adaption there is moderate impairment." (Tr. 13, 334.) He additionally noted that there was "no history of psychiatric treatment and no psychiatric hospitalizations," although Jones was taking Amitriptyline at night to assist in sleeping. (Tr. 333.)

In evaluating the report, the ALJ credited Dr. Block's observations that Jones only appeared "somewhat" depressed, and that Jones "was fully oriented and able to comprehend and concentrate [and that her] memory and judgment were intact." (Tr. 15.) The ALJ then noted Jones's explanation to Dr. Block "that she would like to work, however, she was limited by her physical condition only[,] not her mental condition." (Tr. 15.) Therefore, the ALJ concluded based on Dr. Block's report and observations as well as Jones's own assertions that "such depression was not of a level to preclude work-related activity." (Tr. 15.)

First and foremost, from reading the ALJ's decision, it is clear that Dr. Block's report and opinion were considered as opinion evidence. (Tr. 13, 15.) Second, the ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. 404.1527(f)(2)(i). Such findings, however, are considered opinion evidence and are evaluated by the ALJ using the relevant factors outlined in 20 C.F.R. 404.1527. 20 C.F.R. 404.1527(f)(2)(ii) (relevant factors include the supporting evidence in the case record, supporting explanations provided by the examiners, consistency of the opinion with the record as a whole, as well as other factors which tend to contradict the opinion). The ALJ in its determinations "must develop the record fully and fairly" but need not discuss every piece of evidence presented. *Weber v. Apfel*, 164 F.3d 431, 432 (8th Cir. 1999) (quotation and citation omitted); *see Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (indicating that "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice").

Here, the ALJ complied with these obligations, providing cogent reasons why he credited and discredited certain findings of Dr. Block. The ALJ's opinion shows that he considered Dr. Block's mental impairment assessment, but rejected some of his determinations regarding the severity of Jones's mental impairment because: (1) Dr. Block observed that Jones was only somewhat depressed; (2) Jones's statement that only her physical, not mental, limitations impacted her ability to work contradicted Dr. Block's assessment regarding the severity of her impairment; (3) Dr. Block observed that Jones was fully oriented and able to comprehend and concentrate; (4) Dr. Block observed that Jones's memory and judgement were intact; and (5) Jones did not require psychiatric treatment. (Tr. 15.) The ALJ clearly considered Dr. Block's

report and gave specific reasons for discrediting his finding that Jones experienced moderate impairments in certain mental functions.  The Court finds no error on this ground.

### C. Vocational Expert Testimony

Jones argues that the ALJ improperly omitted the testimony of the vocational expert, Mr. Rocco Meola, during the supplemental hearing.  (Pl.'s Br. 17.)   According to Jones, Mr. Meola's testimony demonstrates Jones's disability under the fifth step.  (Pl.'s Br. 17-18) (citing Tr. 127-128).  Specifically, Jones contends that when a hypothetical containing Dr. Block's opinion regarding Jones's mental impairment was put before Mr. Meola, Jones met her burden of proving disability.  The Court disagrees.

The vocational expert, Mr. Meola, testified that if Jones were capable of light work, she could return to her prior job as a cashier.  (Tr. 125-126.)  Then, Jones's attorney and Mr. Meola engaged in the following dialogue:

> Atty: Yes, I do.  Mr. Meola, assume for a moment that the Social Security Administration psychiatrist's assumption is correct.  And I will read it to you.  With regard to sustained concentration and persistence for performing tasks at a pace, there is a moderate impairment.  With regard to social interaction and adaption [sic], there is moderate impairment. . . .
> BY ATTORNEY:
> Q  Okay, now if a person has those limitations - - you want me to repeat them, or do you have them?
> A  I have them.
> Q  Can they do the jobs that you mentioned?
> A  Person with those limitations, in my opinion, at a moderately impaired level would not be able to work in the competitive labor market.
> Q  Would a person with those limitations be able to work at any job existing in substantial numbers in the national economy?
> A  No.

First, Jones's claim that the ALJ omitted the existence of the vocational expert's testimony is simply incorrect.  The ALJ refers to Mr. Meola's testimony in his decision regarding Jones's ability to return to her past relevant work based on her residual functional capacity.  (Tr. 16.)

Second, the ALJ may properly determine the relevance of or weight given to medical evidence.  Medical opinions are a source of evidence in disability determinations, but are always considered together with the rest of the relevant evidence.  20 C.F.R. 404.1527(b).  Although medical opinions may provide evidence of the nature and severity of a claimant's impairment, the ALJ has the responsibility of reviewing the evidence and making findings of fact. 20 C.F.R. 404.1527(f)(2).  Here, the ALJ determined that Jones had the residual functional capacity of

doing light work, an issue squarely reserved to the Commissioner. 20 C.F.R. 404.1527(e)(2). The questions posed by Jones's counsel are predicated on a fact that Jones had a moderate mental impairment. If the ALJ has determined after a review and discussion of all of the relevant evidence that Jones does not have a severe mental impairment or that Jones retains the residual functional capacity for light work despite any mental impairments, the ALJ was not under an obligation to recite Mr. Meola's testimony regarding what vocations were available in the national economy for a person with moderate mental limitations. As explained above, the Court is unable to conduct its substantial evidence review as it is unclear what the ALJ determined with regards to Jones's mental impairments. Therefore, we **REMAND** to the ALJ for a determination regarding the relevance, if any, of or weight given to Mr. Meola's testimony.

\* \* \* \*

In sum, the Court finds that it cannot conduct its substantial evidence review of the ALJ's decision regarding Jones's mental impairment(s). Accordingly, the issues raised above are **REMANDED IN PART** to the ALJ.

### III.  The ALJ's Findings at Step Three.

Jones argues that the ALJ failed to issue a judicially reviewable decision at step three by failing to (1) consider whether her impairments, alone or in combination, met or were equivalent in severity to one or more of the Listing of Impairments contained in 20 C.F.R. 404, Appendix 1, and (2) articulate the reasons for rejecting Jones's claims. (Pl.'s Br. 18.) As discussed above, the Court finds that the lack of clarity in the ALJ's findings precludes its review. Therefore, the Court reserves its review of this issue.

### IV.  The ALJ's RFC Determinations.

Jones restates her argument that the ALJ failed to address the vocational expert's testimony regarding Jones's ability to work with moderate mental impairments. (Pl.'s Br. 29.) As discussed above, the ALJ may properly determine the relevance of evidence. The Court, however, in absence of clarity regarding the ALJ's findings is unable to conduct its substantial evidence review. Therefore, the Court reserves its review of this issue.

### Conclusion

For the foregoing reasons, the ALJ's final decision is **AFFIRMED IN PART** and **REMANDED IN PART** for further proceedings consistent with this opinion. An appropriate Order accompanies this Letter Opinion.

s/William J, Martini

William J. Martini, U.S.D.J. _____